Taylor, Chief-Justice,
 

 delivered the opinion of the Court:
 

 The question of jurisdiction arises out of the following facts: The Plaintiff was owner of the brig Jane and cargo, both of which were covered by
 
 Spanish
 
 papers to,
 
 *295
 
 protect tlicm from
 
 BHtish
 
 capture. On her voyage from a Spanish to an American port, she was captured by an armed schooner, in a belligerent manner, and a prize master and crew put on hoard of her, by whom she was conducted to the port of Beaufort, in this State, where she was entered as a Spanish merchantman, having all the papers which it is usual for such a vessel to possess. No commission was shewn by the schooner at the time of the capture; but it is known that she was fitted out from
 
 a port in the United States,
 
 whence she sailed on a cruise under a
 
 Carthagenian
 
 commission. Upon the arrival of the Jane at Beaufort, she was consigned by Gonzales, the prize master, to the Defendant, who sold paid of the cargo, and loaded the brig Avith a return cargo, Avhcn the American captain appeared, and libelled the
 
 hvig
 
 and cargo in the United States District Court of Admiralty. The brig was restored, the return cargo directed to be sold, and its proceeds, after payment of costs, paid to the Plaintiff for damages
 
 ;
 
 but as to the prayer in the libel, that damages should be decreed for the value of the cargo on board at the time of the capture, and that the Defendant should account for the value in his hands, the libellant waived all further claim on that process, and no decree Aims made thereon.
 

 It would be a waste of time to quote authorities to prove that the question of prize or no prize is exclusively of Admiralty cognizance : a position that seems to admit of no controversy ¿ and the only enquiry here is, whether that question must necessarily be decided, before it can be ascertained whether the Defendant has committed a wrongful conversion. The brig had been provided Avith
 
 Spanish
 
 papers to guard against a capture by the
 
 British,
 
 the only maritime enemy the United States then had ; and she thus assumed the character of the only nation, against the vessel of Avhich, the schooner, sailing under the Carthagenian flag, and bearing a commission, Avas authorized to cruize. That the province of Carthagena was in a state of revolt
 
 *296
 
 and rebellion to her former sovereign, and that her armed. cruisers were scouring the seas, to make capture of Spanish vessels, arc facts of public notoriety. Whether there-vo^eq s^a^e, claiming' to exercise the right of sovereignty, could lawfully issue commission for that purpose, and whether her cruizers could rightfully make captures, are questions depending upon the laws of war, and they are to be determined by the laws of nations, and not by the municipal laws of any country. The jurisdiction of a Common Law Court, administering a code not common to other nations, is ousted, whenever it appears that the capture was made in a hostile character, whether properly acted upon or not: and whenever the jurisdiction of the Admiralty has once attached by the taking as prize, nothing subsequent can take it away.
 

 But assuming the principle that this Court was at liberty to examine the authority of the commission under which the capture was made, and to pronounce it illegal, because the Carthagenian sovereignty was not recognised by our government, still, as the capture was made in a hostile form, it would be piratical and equally within the Admiralty jurisdiction. This was decided upwards of two hundred years ago, and has been recently confirmed in the great case of
 
 Le Caux
 
 v. Eden, Douglas 594 ; to which case and to Cro. Eliz. I refer, as clearly establishing the principles on which the Court rely.
 

 The
 
 objection
 
 that the Plaintiff would be without redress, if a Common Law Court refuse it, inasmuch as only the Prize Courts of the nation to which the captor belongs can take cognizance of the case, is completely answered by several adjudications in the Coui’ts of the United States. Iñ Talbot
 
 v.
 
 Jansen, 3 Dallas 133, it was decided that a Prize Court of the United States has cognizance of the capture as prize, where the property is brought within the jurisdiction ; and if the capture were made without a commission, or the vessel illegally fitted out in the neutral country, is bound to make restitution. The same princi
 
 *297
 
 ple is established by the case of the
 
 Alerta,
 
 9 Crunch, 359, and of the L'Invincible, 1 Wheaton, 257, 8. But a more decisive answer is, that in this case, the Court of Admiralty did exercise its j urisdiction by a restitution of the vessel, and a sale of the return
 
 cargo;
 
 and would doubtless have given damages for the illegal capture, had the Bibellant thought proper to proceed for them. 3 Wheat.
 
 546.
 

 Two plainer propositions cannot be stated than that this subject is exclusively of Admiralty jurisdiction $ and that the Prize Court ivas fully competent to administer complete relief and justice to the Plaintiff, upon proper application. If this Court has not jurisdiction of the subject matter, the Court cannot perceive how jurisdiction is’ given by the circumstance of the privateer’s being fitted out in a port of the United States, in violation of an act of Congress. There is nothing in that act v.hich can have the effect of enlarging the jurisdiction of this Court $ for the offences defined in it are triable and punishable solely in the Courts of the United States. The maxim which precludes a person from availing himself of his own wrong, or setting up a defence founded in a violation of the law, pre-supposes that the Court has jurisdiction of the matter against which such defence is brought
 
 forward;
 
 but can never operate so as to confer a jurisdiction on the Court. If a person were indicted for a trespass in talcing away property, in a Court having no jurisdiction of such a crime, and it should appear in the course of the evidence relied upon by him, that he committed a felcny instead of a trespass, could the Court on that account convict and punish for the trespass
 
 f
 
 Or if a hill were instituted in Chancery, which, upon the face of it, shewed that there was a complete and exclusive remedy at law, would the Court sustain the bill, because the answer shewed that the Defendant had violated a positive law ? I apprehend the answer to both of these questions must be in the negative.
 

 
 *298
 
 The Court are of opinion, that a Court of Common Law has no jurisdiction of the case, and that judgment be ren~ dcred for the Defendant.